IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-00692-DME-MEH

LANDCO EQUITY PARTNERS, LLC,
27 SOUTH TEJON PARTNERS, LLC,
LANDCO 27, LLC, and
LANDCO 19 NORTH TEJON, LLC,

      Plaintiffs,

v.

THE CITY OF COLORADO SPRINGS, COLORADO,
THE CITY OF COLORADO SPRINGS PUBLIC FACILITIES AUTHORITY,

      Defendants.

---

## ORDER ON PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

---

      Plaintiffs have filed a Motion for Protective Order [docket #22] seeking seek protection from the production of certain documents involving the potential settlement of this action.  The matter is briefed and has been referred to this Court for disposition.  The Court heard oral argument on the matter on July 10, 2009.  For the reasons set forth herein, the Court **grants in part and denies in part** the Motion for Protective Order.

## BACKGROUND

      The allegations underlying this complex contract action are set forth in a twenty-one page single-spaced Complaint filed by the Plaintiffs on March 27, 2009 [docket #1].  In the interest of brevity, and recognizing that there are specific defenses to the allegations set forth herein, the Court summarizes the allegations as follows.  The activities underlying the dispute in this matter commenced in the summer 2007 when the City of Colorado Springs (City) solicited the Plaintiffs (collectively, "LandCo") to bid on a project to retain the United States Olympic Committee

("USOC") headquarters located in the City.  The project involved updating the USOC complex, including building new offices, redeveloping headquarters, updating athlete housing, expanding the cafeteria and remodeling the visitor center, and would cost approximately $50 million.  LandCo was awarded the project and the parties' commitments to the project were memorialized in several contracts.  Based upon these commitments, the USOC determined to stay in Colorado Springs.

In or about February 2008, the parties entered an Economic Development Agreement Regarding USOC Facilities (EDA), which outlines the parties' intentions relating to the total package of incentives the USOC would receive.  Under the EDA, LandCo agreed to sell five floors of the Headquarters building to the City, which would then make the floors available to the USOC for its headquarters.  The City purportedly agreed to take all actions necessary to cause the City's Public Facilities Authority to irrevocably issue Certificates of Participation (municipal bonds sold to investors to raise money) in the amount of $20,786,000.00 to purchase the Headquarters office space.  This agreement was memorialized in a separate Purchase and Sale Agreement between LandCo and the City.  LandCo alleges that the City has breached this agreement by taking no efforts to issue the Certificates of Participation and failing to purchase the office space.

Also, under the EDA, LandCo agreed to manage renovations to a temporary office building and make the building available to the USOC for temporary office space.  LandCo has alleged that after completing renovations and evicting tenants, the USOC decided that it only needed a portion of the building and has paid common area maintenance charges only on that space (and a small portion on vacant space).  LandCo has also alleged that the City failed to provide already committed funds for the costs of the temporary office space.  LandCo claimed that the City's and USOC's failures to meet their obligations under the referenced agreements have caused LandCo to become

2

at risk of losing the Headquarters building to the construction contractor and open to claims from the general contractor working on the building.

Through its Complaint, LandCo brought substantive and procedural due process claims against the City and its officials, breach of fiduciary duty claims against the USOC, and breach of contract claims against all Defendants. After two requests for extension of time to file an answer or other response to the Complaint, LandCo voluntarily dismissed the USOC as a defendant on June 9, 2009, stating that the parties had "resolved all claims in the above-captioned lawsuit." On June 11, 2009, the City filed a Motion to Dismiss LandCo's Complaint contending that LandCo failed to state claims upon which relief may be granted and the Court lacks subject matter jurisdiction over certain claims.

This Court, through the Order of Reference filed by Judge Ebel on April 2, 2009, became involved in the matter to assist the parties in facilitating a settlement. During negotiations, LandCo resolved its claims against the individual city officials, and the parties filed a stipulation for dismissal of the claims on July 1, 2009. At the time of this order, settlement efforts are continuing with the remaining parties.

On June 19, 2009, LandCo filed the its Motion for Protective Order asserting that the *Gazette* newspaper had submitted an open records request pursuant to Colo. Rev. Stat. § 24-72-100.1 *et seq.* seeking all documents exchanged between and among the parties in this litigation from the date the litigation was filed. LandCo asserts that the scope of the request includes documents exchanged during, and for the purpose of, settlement negotiations, which have been characterized as confidential and are intended to remain so. LandCo contends that if the City were to disclose the confidential documents, settlement efforts would not simply stall, but break down altogether.

LandCo requests that the Court "impose a protective order on all correspondence between [LandCo], the City Defendants and the United States Olympic Committee."

The Court held a hearing on the motion on July 10, 2009.  The Court heard argument from the parties to this action, as well as from Freedom Colorado Information, Inc. (owner of the *Gazette* newspaper) (Freedom).  The Court instructed Freedom that if it wished to challenge the entry of the protective order, it must move for intervention in the case.  That same day, Freedom moved to intervene for the limited purpose of opposing the Motion for Protective Order, and upon no objections from the parties, the Court granted the limited intervention.

In accordance with prevailing case law, this Court ordered that Plaintiffs provide for *in camera* inspection all documents over which they request protection.  The documents were submitted timely to Chambers on July 16, 2009, but were not identifiable in a specific and efficient manner.  Thus, on July 23, 2009, the Court instructed the parties to label the documents by number and return the documents to the Court on July 24, 2009.  The Court has completed its review of the documents.

## DISCUSSION

I.   **Legal Standard for Protective Order**

The entry of a protective order is left to the sound discretion of the district court.  *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008) (citing *United Nuclear Corp. v. Cranford Ins. Co.,* 905 F.2d 1424, 1427 (10th Cir. 1990)).  Under Federal Rule of Civil Procedure 26(c), for "good cause" a court may issue a protective order regarding discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Such an order may forbid the disclosure of discovery to the public.  *See* Fed. R. Civ. P. 26(c)(1)(A).  The "good cause" standard

4

of Rule 26(c) is "highly flexible, having been designed to accommodate all relevant interests as they

arise." *Rohrbough*, 549 F.3d at 1321 (citing *United States v. Microsoft Corp.,* 165 F.3d 952, 959

(D.C. Cir. 1999)).

Rule 26(c) confers broad discretion on the trial court to decide when a protective order is

appropriate and what degree of protection is required. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20,

34 (1984) ("The trial court is in the best position to weigh fairly the competing needs and interests

of parties affected by discovery. The unique character of the discovery process requires that the trial

court have substantial latitude to fashion protective orders."). The good cause standard of 26(c) is

not met by conclusory statements. *Klesch & Co. Ltd. v. Liberty Media Corp.,* 217 F.R.D. 517, 524

(D. Colo. 2003). Instead, "the party seeking a protective order must show that disclosure will result

in a clearly defined and serious injury to that moving party." *Id.* (citing *Exum v. United States*

*Olympic Committee,* 209 F.R.D. 201, 206 (D. Colo. 2002)). As a general rule, the "good cause"

calculation requires that the Court balance "the [moving] party's need for information against the

injury which might result from unrestricted disclosure." *Exum,* 209 F.R.D. at 206 (citations

omitted). Additionally, the Court should consider any privacy interests and whether the case

implicates issues important to the public. *Id.*

**II.     Scope of Protection**

At the outset, the Court notes that during the hearing, counsel for Freedom argued that the

Court may not issue a protective order over certain non-discovery documents Freedom seeks to

obtain pursuant to the Colorado Open Records Act, including correspondence exchanged among city

officials. *See Seattle Times*, 467 U.S. at 34 (a protective order prevents a party from disseminating

only that information obtained through use of the discovery process); *Gillard*, 196 F.R.D. 382, 387

(D. Colo. 2000) ("[a] protective order, of course, prevents only the disclosure of information obtained solely as the result of court sanctioned discovery").  Despite Freedom's concerns, and in accordance with prevailing law, this Motion for Protective Order seeks protection only over certain documents exchanged among the Plaintiffs, the City Defendants and the USOC (all of whom are, or were, parties to this litigation).

In addition, counsel for Freedom requested that, should the Court grant the requested protective order, the Court impose a limited duration on any prohibition of the disclosure of protected documents.  The Court has taken this request into consideration and, for reasons discussed below, grants in part Freedom's request.

## III.    Balancing Interests

All interested parties in this action agree that "good cause" is the proper standard for imposing a protective order pursuant to Fed. R. Civ. P. 26(c), and that the Court must weigh public and private interests in determining whether to protect documents from disclosure.  However, the parties ask the Court to apply different analyses to this issue.  Freedom asks the Court to follow the reasoning set forth in opinions from this district which involve challenges to protective orders by news media.  For instance, in *Daines v. Harrison*, 838 F. Supp. 1406 (D. Colo. 1993), Judge Nottingham found that the magistrate judge abused his discretion in ordering that the terms of a settlement agreement between a sheriff's department and terminated deputy were to be kept confidential, since the parties failed to demonstrate an interest favoring confidentiality that would outweigh the public's interest in knowing how public funds are disbursed.  *Id.* at 1409.  Also, in *Exum v. United States Olympic Comm.*, 209 F.R.D. 201 (D. Colo. 2002), Magistrate Judge Coan found that the USOC failed to demonstrate good cause to protect athletes' drug testing records from

6

disclosure since the athletes did not have a reasonable expectation of privacy in the records.  In both cases, the courts weighed the public and private interests.

While I agree with the findings and decisions made in both *Daines* and *Exum*, I find that the facts underlying those opinions are distinguishable from the case at bar and, therefore, the interests to be weighed here are different.  In neither *Daines* nor *Exum* were the documents sought to be protected exchanged for purposes of settlement negotiations, and the facts in *Exum* involved no settlement efforts or agreements at all.  I agree with the Court in *Daines* that the public's interest in seeing that public funds are utilized properly is an important concern; however, that concern is not yet present in the instant case where no settlement has been reached with the City.[1]  The *Daines* court dealt only with the protection of one document - a final settlement agreement - in which the parties in a single-plaintiff employment dispute had memorialized specific terms that had been reached through confidential negotiations.  Here, the parties in a complex contract matter seek protection of numerous documents exchanged during and for the purpose of settlement negotiations. Because the facts and interests in this case differ significantly from those addressed in *Daines* or *Exum*, I find that I cannot apply the same analyses.

Rather, I find persuasive a case advanced by the Plaintiffs in this matter.  In the Second Circuit's opinion in *United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853 (2d Cir. 1998), a newspaper intervened in a complex CERCLA action involving a town's water supply, seeking to vacate a protective order prohibiting disclosure of settlement negotiation information.  The court in *Glens Falls* weighed the presumption of public access to the documents with the countervailing

---

[1]In fact, during the hearing, the City asserted that upon reaching a settlement with LandCo, the public will be invited to participate in a meeting at which City officials will consider approval of such settlement.

interest in the potential impairment of the Article III function of fostering settlement upon release of settlement materials. *Id.* at 857-58. First, the court found that, where a case is complex and expensive, and resolution of the case will benefit the public, the public has a strong interest in settlement. *Id.* at 857. With this in mind, the court recognized that access to settlement discussions and documents has no value to those persons monitoring the exercise of judicial power by the federal courts, since a judge cannot act on them until they are final and usually is not privy to them. *Id.* In addition, the court noted that, while the public is granted access to meetings at which the town council will consider approving settlement agreements, it is typically not allowed access to settlement discussions and documents through the state's open records and open meetings acts.[2] *Id.* Finally, the court acknowledged that documents prepared solely with reference to the government's posture in a legal proceeding are exempt from disclosure under the state's open records act. *Id.* Considering these factors, the *Glens Falls* court concluded that settlement discussions and documents in that case did not carry a presumption of public access. *Id.*

Against this presumption, the court considered whether release of the materials would likely impair in a material way the performance of the Article III function in fostering settlement. *Id.* at 857-58. The court recognized that parties rely on the confidential nature of the settlement process to have frank and open discussions about both the strengths and weaknesses of their cases, and that few cases would ever settle if the press or public were privy to such discussions. *Id.* at 858. The court agreed with the trial judge that concerns about being judged by the "court of public opinion"

---

[2]The Court notes that this is not inconsistent with the Third Circuit's opinion that a strong presumption exists against granting a confidentiality order if it is likely that information will be accessible under relevant freedom of information law. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 792 (3d Cir. 1994).

would hardly encourage negotiations, and that the parties in the case needed a private forum in which to explore settlement. *Id.* The court concluded that the need for a fair and efficient resolution through settlement of the complex and expensive case of great public importance far outweighed the negligible presumption of access to settlement negotiation materials. *Id.*

This Court perceives the within case to be complex and expensive, and of great public importance considering the interests involved with retaining the USOC's headquarters and sports complex in the City of Colorado Springs.  While I recognize the presumption in favor of public access to documents retained by the City, I find that the particular documents sought to be protected in this case carry little presumption of access for the same reasons found in *Glens Falls*: first, under the Colorado open records and open meetings acts, the public typically is not granted access to communications involving litigation strategies or certain confidential records, and second, while this Court is currently involved in facilitating settlement discussions in this case, it cannot and will not act upon any confidential documents or communications provided to the Court or exchanged for settlement purposes unless and until settlement negotiations are concluded.  Thus, the public's interest in monitoring the government through use of settlement negotiation information is negligible, and a presumption of public access to settlement negotiation information in this case is practically nonexistent.

Against this presumption, the Court weighs privacy interests in the material, which, according to the Plaintiffs, are significant.  Plaintiffs contend that "sensitive" business information was exchanged among the parties *only* to advance settlement talks, and such information was and is intended to remain private and not be used in the litigation.  Plaintiffs assert that if such information were to be disclosed to the public, the settlement negotiations in this case would not

9

only falter but likely break down altogether.

The *Glens Falls* court recognized that another countervailing interest to consider in such a case is the ability of the Court to foster settlement, an important Article III function.  As I noted during the hearing in this matter, parties engaged in settlement talks are more likely to hold frank and open discussions regarding the strengths and weaknesses of their case in a confidential setting.  During these conversations, I, like many courts, share with the parties my observations about the case, both positive and negative, to assist the parties in adjusting or solidifying their bargaining positions.  If the public were privy to these conversations, I believe that few or no settlement negotiations would take place.  This would be particularly damaging in a case, such as the instant action, where it would be a great public benefit, and is in the public's interest, to resolve a complex and expensive matter short of litigation.

The Court notes that protective orders issued pursuant to Rule 26(c) are common in litigation to protect sensitive information exchanged during the course of discovery, particularly when the documents reflect confidential financial information.  Typically, parties enter into stipulations regarding the content of a proposed protective order.  In these instances, confidential documents are protected from disclosure to third parties during the course of the litigation, and then the documents are either returned to the owner or destroyed.  Here, the Plaintiffs assert that they have shared sensitive business information with the parties during settlement negotiations in an effort to resolve the litigation.

The Court concludes that the need for a fair and efficient resolution of this case far outweighs any slight interest the public may have in accessing settlement negotiations in this matter.  Moreover, the information exchanged is, and was intended to remain, confidential.  That is, the

information would not have been exchanged but for the parties' efforts to resolve the litigation.

Therefore, the Court grants Plaintiffs' request to protect from disclosure correspondence and related

documents exchanged among the parties for the purpose of, and in relation to, settlement of this

case. Certain documents (listed below) are confidential and may not be disclosed to third parties

until all obligations necessary to accomplish the settlement of this case are completed.

## IV.    Protected Documents

At the Court's request, the parties provided for *in camera* inspection those documents sought

to be protected pursuant to Fed. R. Civ. P. 26(c). *See Usury v. Ritter*, 547 F.2d 528, 532 (10th Cir.

1977); *see also Gillard v. Boulder Valley Sch. Dist. Re-2*, 196 F.R.D. 382, 385 (D. Colo. 2000)

(court is required to "review specific, identified information to determine whether good cause exists

to enter [protective] order"); *City of Hartford v. Chase*, 942 F.2d 130, 136 (2d Cir. 1991). Upon

a comprehensive review, the Court finds that the following documents provided to the Court by the

Plaintiffs[3] fall under the protective order:

(1)      Settlement offers, counter offers, and related communications between LandCo and

the City of Colorado Springs, Bates #1-328.

(2)      Settlement communications involving LandCo, City of Colorado Springs and the

USOC, Bates #329-379.

(3)      Confidential documents sent to City of Colorado Springs on LandCo's behalf, Bates

#380-446.

(4)      Settlement Agreement drafts and comments, Bates #447-653.

---

[3]For ease in reviewing the documents, the Plaintiffs separated the documents into the
following categories.

  (5)  Purchase and Sale Agreement drafts and comments, Bates #654-716.

  (6)  Settlement Agreement and Purchase and Sale Agreement combined comments and drafts, Bates #717-773.

  (7)  Condominium Declaration drafts and related comments, Bates #774-1090.

In addition, the City of Colorado Springs provided documents for *in camera* inspection that it contends were exchanged among the parties for the purpose of, or in relation to, settlement of this case. The Court finds that certain of these documents exchanged among the parties through the discovery process also fall under the protective order and are identified as follows: LandCo #43-44, #53-55, #61-76, #80-82, #86-91, #97-99, #101-106, #111-112, #114, #119, #124, #134, #154-162, #164-169, #213-219, #246-309, #358-359, #362-381, #420-421, #457-458, #483, #510-511, #514-522, #533-543, #558-563, #568-570, #573-636, #640-641, #647-650, #656-658, #680-731, #853-856, and #867-870.

Finally, certain of the City's documents contain both confidential protected communications and also information that is not protected; therefore, only portions of these documents can be withheld under this protective order. The material that should be protected in the following documents includes any emails, letters or other written communications, including attachments, that were exchanged between one or more of the parties: LandCo #36-40, #48-49, #56-57, #59, #77, #83, #144, #411-415, #418, #489, #492, #496, #503, #528, #531-532, #545-547, #550-551, #553-555, #571-572, #734, #743, #753, #761, #764-765, #795-796, #811-812, #814, #840-841, #893-895, #899-900, and #910-911.

In addition, the Court recognizes that settlement negotiations are continuing and that the parties likely are creating new documents on a daily basis that may fall under this protective order.

12

Therefore, all such documents (qualitatively similar to those listed above) that are exchanged among the parties for the purpose of, and in relation to, settlement of this matter are hereby protected by this order.   Consistent with protective orders filed in this district, the parties shall designate such documents as "confidential" pursuant to this protective order.

## **<u>CONCLUSION</u>**

The Court finds that the public's interest in the settlement of this complex and expensive contract matter, a resolution of which will benefit the public, supports the Court's decision to foster settlement and weighs heavily against the slender presumption of public access to settlement negotiation information in this case, particularly where, as here, the public will have access to discussions and communications regarding the City's approval of any settlement reached between the parties.

Accordingly, for the reasons stated above, it is hereby ORDERED that Plaintiffs' Motion for Protective Order [filed June 19, 2009; docket #22] is **granted in part and denied in part** as set forth herein.  The parties shall retrieve their tendered documents from Chambers on or before the close of business July 29, 2009.  The effect of this order is stayed until July 31, 2009 at noon to allow the parties to file any appeals they may wish to make to Judge Ebel.

Dated at Denver, Colorado, this 28th day of July, 2009.

BY THE COURT:

_Michael E. Hegarty_

_____
Michael E. Hegarty
United States Magistrate Judge

13